UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAL IM K., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:20-cv-05743-BAT <br><br> **ORDER REVERSING AND REMANDING** |

Plaintiff appeals the ALJ's decision finding her not disabled. Plaintiff alleges disability beginning in April 2015, due to back and neck pain and depression. Plaintiff contends that the ALJ erred in his Step Two determination that her depression is not severe because he found unpersuasive two medical opinions indicating this impairment was severe. Plaintiff further contends the ALJ unreasonably discounted her subjective symptom testimony and failed to consider several lay witness statements. Dkt. 12.

The Court concludes that this case should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

## BACKGROUND

On May 9, 2017, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits; a Title II application for disabled widow's benefits on May 9, 2017; and a Title XVI application for supplemental security income on May 8, 2017. In all applications, Plaintiff alleged disability beginning July 31, 2012. These claims were denied

ORDER REVERSING AND REMANDING - 1

initially on September 28, 2017 and upon reconsideration on February 8, 2018. Plaintiff attended a hearing before Administrative Law Judge Allen G. Erickson on April 18, 2019, where she was represented by her attorney Charles W. Talbot. Vocational expert Steve Duchesne and Korean interpreter Casey Yim also appeared at the hearing.[1] Plaintiff was 56 when she filed her disability claims and 58 at the time of the hearing.

Utilizing the five-step disability evaluation process,[2] the ALJ found Plaintiff's cervical spine degenerative disc disease, status post-surgery; and lumbar spine degenerative disc disease, status post-surgery are severe impairments; Plaintiff has the residual functional capacity to perform light work with additional limitations, and Plaintiff is still capable of performing past relevant work as a Hostess and Bank Teller. Tr. 18, 19, 22, 15, 26.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id*. at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

A.   **Step Two – Determination of Impairment Severity**

In challenging the ALJ's step two finding that Plaintiff does not have a severe medically determinable mental impairment, Plaintiff contends the ALJ erred when he rejected the January 2018 and February 2018 opinions of consultative examining psychiatrist Pamela J. Moslin-

---

[1] In her opening brief, Plaintiff takes issue with the scope of what was interpreted and the omission of the interpreter's CV. Plaintiff does not however, assign error to this issue.

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING - 2

Lykins and DDS psychological consultant Jan L. Lewis, Ph.D.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant has a severe mental impairment, an ALJ must rate the degree of functional limitation for four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(c), 416.920a(b)(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Ordinarily, if the ALJ rates a claimant's degrees of limitation as "none" or "mild", the ALJ will find the claimant's mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ acknowledged that Plaintiff has a history of depression (Tr. 20 citing Ex.5F/14), but found that her depression "caused <u>no</u> difficulty in the ability to understand, remember, or apply information; <u>mild</u> difficulty in the ability to interact with others; <u>mild</u> difficulty in the ability to concentrate, persist, or maintain pace; and <u>mild</u> difficulty in the ability to adapt or manage oneself." Tr. 20 (emphasis in original). The ALJ also conclude that Plaintiff's functional limitations and restricted daily activities resulted primarily from Plaintiff's physical, not her mental impairments. Tr. 20. The ALJ noted that Plaintiff did not have significant issues with negative depression screens until her spouse passed away in mid-2017. Tr. 21.

When Plaintiff was examined by Dr. Moslin-Lykins on January 10, 2018, she was taking antipsychotic and antidepressant medications, and presented as agitated, depressed, and occasionally tangential. Tr. 1313-1314. The mental status examination administered by Dr. Moslin-Lykins revealed that, while Plaintiff's thought process was generally linear and focused, she was occasionally tangential and derailed but could eventually be interrupted and refocused;

ORDER REVERSING AND REMANDING - 3

1  Plaintiff had very poor self-esteem, feelings of self loathing, and has suicidal thoughts (but
2  would never kill herself for fear of going to hell), and her long and short term memory were
3  generally impaired. Tr. 1315.

4  Dr. Moslin-Lykins diagnosed major depression, severe, partially treated and chronic hip
5  and back pain. The doctor concluded that Plaintiff was too distressed to work; would have
6  difficulty learning tasks and performing tasks consistently without having to be continuously
7  reminded; would have difficulty getting along with coworkers, supervisors, and the public
8  because of her psychiatric symptoms; and, would have difficulty functioning in the workplace
9  and would probably find it terribly stressful, causing her to further decompensate. Dr. Moslin-
10 Lykins recommended that Plaintiff not work at the present time, although she opined that
11 Plaintiff might be able to work in the future with adequate medications. Tr. 1315-1316.

12 Dr. Jan L. Lewis, Ph.D., state agency reviewing doctor, reviewed the claim file (including
13 Dr. Moslin-Lykins' report) on February 8, 2018. Tr. 150-163, 164-177, 178-192. Dr. Lewis
14 concluded that Plaintiff was moderately limited in her ability to understand and remember
15 detailed instructions, to maintain attention and concentration for extended periods, to complete a
16 normal workday and work week without interruptions from psychologically based symptoms and
17 to perform at a consistent pace without an unreasonable number and length of rest periods, and to
18 interact appropriately with others and the general public. Tr. 155-156. Dr. Lewis opined that
19 Plaintiff had severe depression that was only partially treated (Tr. 156), and severe mental
20 disorders as depression, bipolar, and related disorders. Tr. 155.

21 When considering medical opinions (filed on or after March 27, 2017), the ALJ considers
22 the persuasiveness of the medical opinion using five factors (supportability, consistency,
23 relationship with claimant, specialization, and other), but supportability and consistency are the

two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). And the new regulations eliminate the agency's "treating source rule," which gave special deference to treating doctors' opinions. 82 Fed. Reg. at 5853.

The ALJ rejected Dr. Lewis's assessment because she did not have the opportunity to consider "the medical evidence available at the hearing level, which shows [Plaintiff's] symptoms and mental status improved with therapy and medication where she consistently exhibited cooperative, interactive, and pleasant behavior, intact thought process; grossly intact memory; adequate concentration/attention; and full affect. Tr. 21 (citing Ex. 9F/79, 84, 91, 127…313, 468, 472, 476…548, 562-569). Similarly, the ALJ rejected Dr. Moslin-Lykins' assessment because her "opinion clearly only relates to time of the evaluation," Plaintiff started attending therapy regularly thereafter, "the doctor acknowledged she would improve with treatment, and the opinion is not consistent with the longitudinal record." Tr. 22.

The ALJ considered Plaintiff's hearing testimony that she has difficulty with mental problems, being alone, and not being involved in her community, along with her son's testimony that Plaintiff is antisocial and her friend's testimony that Plaintiff has had difficulty with the death of her spouse. Tr. 20. The ALJ also considered that Plaintiff engages "in an array of daily activites except as limited by physical symptoms, including chores, shopping, driving, and

attending church" and that she testified at the hearing that she helped care for her ailing husband for two years, "including taking him to appointments, driving him places, and preparing him meals." *Id.* (citing Ex. 18E, 20E, and 4E). The ALJ did not explain however, how these relatively mundane daily activities make it so that Plaintiff's major depressive disorder with psychotic features no longer seriously affects her ability to function in a workplace.

The ALJ correctly noted that Plaintiff has had behavioral/psychotherapy sessions on a weekly/bi-weekly basis since the Spring of 2018 and examination reports through the Spring of 2019 document "cooperative, interative, and pleasant behavior, intact thought process, intact memory, adequate concentration/attention; groomed appearance, normal speech and good insight and judgment." Tr. 21. However, the fact that Plaintiff's psychotherapy has been ongoing for years is also evidence of the severity of her mental problems. The records from October 2018 show that Plaintiff was still experiencing significant mental symptoms including thoughts of suicide, trouble sleeping, concerns by family that she was staying home to much, significant anxiety symptoms, possible PTSD, and fair insight and judgment. Tr. 1500-1504.

The ALJ indicated that the psychological assessments were discounted because they were not consistent with the longitudinal record. This is a conclusory statement that is insufficient to justify an ALJ's rejection of a medical opinion. *See Embrey v. Bowen*, 849 F.2d 18, 421-22 (418 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.") *see also Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails

to offer a substantive basis for his conclusion."). In addition, while the therapy notes cited by the ALJ indicate that Plaintiff was cooperative, well groomed, with intact thought process and memory, the ALJ provided no explanation of why these observations contradict the opinions of Dr. Lewis and Dr. Moslin-Lynkins, who rated Plaintiff's mental health issues as severe. These observations are not facially inconsistent their opinions and focus primarily on Plaintiff's cognition—her concentration, memory, ability to think abstractly—not her behavioral limitations such as attendance, or ability to maintain appropriate behavior and come to work on time.

The ALJ erred in rejecting the psychological opinions and in his Step Two determination that Plaintiff's depression is not severe. This was error as when mental limitations such as short simple instructions and occasional interaction with the general public were presented to the vocational expert, past work was excluded. Tr. 78.

**B.     Subjective Symptom Testimony**

Plaintiff also argues tat the ALJ erred in finding her allegations of pain were not "entirely consistent with the medical evidence" and daily activities.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment " 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v.*

*Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346.

At the first step, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. Tr. 23. At the second step, because there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's testimony. Here, the ALJ discounted Plaintiff's subjective complaints because the objective medical evidence did not support Plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms; and (2) Plaintiff's activities of daily living are not consistent with her complaints of pain. Tr. 23-24.

The ALJ summarized Plaintiff's complaints due to disc impairment post-surgery in 2010 and 2014 as follows: back and neck pain, leg weakness, falling, need to change position frequently; limited ability to lift, stand, walk, and sit for extended periods, perform all listed postural activities and reach; inability to lift more than 5 pounds or to sit or stand for more than 2 hours; need to lay down to feel better; use of a heating pad at night to sleep, a cane prescribed in 2014 when her hip hurts, and a walker when her back hurts; experiences side effects from medication for these impairments of sleepiness, faigue, and dizziness; engages in activities of daily living (such as personal care, preparing food, doing chores, shopping in stores and driving) with difficulty due to her limitations. Tr. 23 (internal citations omitted).

Plaintiff also testified at the hearing that she has limited use of her left arm following her neck surgery (Tr. 61); she lives alone and only outside contacts are her children and treatment

providers (Tr. 75); she does not participate in the large Korean community (*id.*); she sits upstairs at church so that she can walk around when needed (*id.*); she takes walks in her garage but is limited to about 15 minutes, walks slowly due to left hip and left leg pain, and needs to lie down often. Tr. 74. During the hearing, she got up from her chair and squatted on the floor because her hip was hurting. Tr. 72. She also testified that she had limited use of her left arm following her neck surgery. Tr. 61.

The ALJ acknowledged Plaintiff's multiple surgeries (neck surgery in 2010, back fusion in 2014, and right hip surgery in 2014), but concluded that Plaintiff had good results from her surgeries, received medication and physical therapy, and had only minimal degenerative disc disease and no acute osseous abnormality. Tr. 23 (internal citations omitted). But the ALJ did not explain how the medical records were inconsistent with any specific aspect of Plaintiff's testimony. Even if the ALJ's discounting of Plaintiff's testimony was supported by a lack of objective medical evidence, this cannot be the sole reason for discounting her testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

Additionally, the fact that Plaintiff performs certain daily activities is not grounds to discount her credibility. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001). An adverse credibility finding is only warranted "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a

work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). Here, the daily activities relied upon by the ALJ do not involve physical functions that are transferable to a work setting and do not contradict Plaintiff's testimony. She testified that while she can do things such as cook and drive to church, she finds it difficult to do so given the pain she suffers when sitting or walking more than 15 minutes and that she frequently needs to lay down to find relief. The ALJ noted that Plaintiff's son, friends, and previous co-workers all attested to Plaintiff's pain, her inability to sit through church, her limp, and her difficulty performing exertional activities. Tr. 23. However, as discussed below, the ALJ provided no reasons for rejecting the lay witness testimony. The record also reflects that as late as the hearing on April 18, 2019, Plaintiff was taking Tramadol for pain. Tr. 418. While the ALJ acknowledged Plaintiff's limitations make it difficult for her to engage in daily activities, the ALJ failed to evaluate the impact of her pain on her ability to function in a work setting.

Because Plaintiff's daily activities do not clearly undercut the credibility of her symptom testimony, and lack of objective medical evidence cannot be the sole basis for discounting her testimony, the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's testimony.

**C.    Lay Testimony**

"Lay witness testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (internal citations and quotation marks omitted). Lay witness testimony is uniquely valuable because these witnesses, unlike doctors, are able to observe the claimant's symptoms and activities on a daily basis. *See Diedrich*, 874 F.3d at 640 ("The fact that lay

ORDER REVERSING AND REMANDING - 10

testimony ... may offer a different perspective than medical records alone is precisely why such evidence is valuable....").

Plaintiff submitted four lay witness statements from her son, friends, and previous co-workers. Tr. 405-415. The statements refer to significant limitations that may be inconsistent with Plaintiff's ability to perform work on a consistent basis, *i.e.*, 8 hours a day, 5 days a week, on a regular basis. SSR 96-8p – 8. For example, Plaintiff's son says she cannot lift more than 10 pounds, has a hard time moving, cannot stand and be still for more than 30 minutes to an hour, does not sleep because of her back pain, and does not get out of the house except for church. Tr. 406. Her friend and former coworker, Suk Johnson, says Plaintiff is in a lot of pain, walks slowly, cannot sit for more than an hour, has a lot of emotional pain, cannot focus on her ESL classes, and has to take multiple breaks to lay down when doing household chores when the pain is too much for her to continue. Tr. 409. Ms. Johnson notes that Plaintiff has worsened throughout the years. *Id.*

Yong Stottlemire, Plaintiff's friend and fellow church goer, states that Plaintiff has a hard time standing, cannot sit for too long, cannot sit through the church service, cannot lift heavy items, and when she worked at the bank, could not lift the coin bags. She also states that Plaintiff is very skinny, frail, cries a lot, has problems sleeping, does not want to associate with anyone, and does not leave the house except for church and doctor appointments. Tr. 412.

Plaintiff's friend Hyunok Ywilchish writes that Plaintiff always looks like she is in pain, makes grunting/grimacing sounds of pain, cannot sit through the church service but has to stand, and that she limps when she walks. Tr. 415.

The ALJ makes only a passing reference to two of the statements with regard to Plaintiff's depression ("son also alleges that she is antisocial and her friend alleges she has

ORDER REVERSING AND REMANDING - 11

difficulty with her spouse's passing."). Tr. 20. With regard to Plaintiff's physical impairment, the ALJ states only that he considered the four statements that "mention how the clamant looks like she is in pain, cannot sit through church services, has to stand, limps when she walks, and has difficulty generally performing exertional activities." Tr. 23. Defendant concedes that the ALJ erred when he failed to evaluate lay witness statements "that partially conflict with the residual functional capacity finding," but argues that the error was harmless because the lay witness statements reported "near identical limitations" reported by Plaintiff and which the ALJ already found unreliable. Dkt. 13, p. 12. However, the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050,1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Spraque v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 404.1513 (e). Lay testimony regarding a claimant's symptoms or how an impairment affects ability to work "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 - 512 (9th Cir. 2001); *Dodrill v. Shalala*,12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, he must provide reasons germane to each witness and may not simply categorically discredit the testimony. *Id*. at 919. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Here, the lay witnesses described significant limitations that could be considered inconsistent with an ability to perform work on a consistent basis as set forth in SSR 96-8p, *i.e.*, 8 hours a day, 5 days a week, on a regular basis. Thus, the ALJ was required to expressly determine to disregard the statements and give reasons germane to each witness for doing so.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the opinions of Dr. Moslin-Lynkins and Dr. Lewis and the ALJ's prior Step Two finding that Plaintiff's mental conditions are not severe, consider lay witness statements, develop the record, redetermine the RFC as needed, and proceed to the remaining steps as appropriate.

DATED this 26th day of January, 2021.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge